ATCHISON, T. & S. F. RY. CO. v. RUTHERFORD *et al.*

No. 1029.    Opinion Filed November 14, 1911.

**CARRIERS—Injury to Goods—Connecting Lines—Presumptions.** Where goods, shipped over several connecting lines, are found to be injured when they reach their destination, there is no presumption that the injury occurred while the goods were in the hands of the first carrier.

(Syllabus by the Court.)

*Error from McClain County Court; E. E. Glasco, Judge.*

Action by Lou Z. Rutherford against the Atchison, Topeka & Santa Fe and the Oklahoma Central Railway Companies. Judgment for plaintiff, and the former railway company brings error. Reversed and remanded.

*Cottingham & Bledsoe* and *Charles H. Woods,* for plaintiff in error.

*Ben Franklin,* for defendants in error.

DUNN, J.   This case presents error from the county court of McClain county, and was an action begun by defendant in error, Lou Z. Rutherford, against the Atchison, Topeka & Santa Fe Railway Company and the Oklahoma Central Railway Company to recover damages in the sum of $200 for injuries occasioned by the negligence of these lines of railroad in making shipment of a consignment of household goods from Oklahoma City to Blanchard, Oklahoma, over the lines of the Atchison, Topeka & Santa Fe Railway Company and the Oklahoma Central Railway Company.   It is contended by defendant in error that the Atchison, Topeka & Santa Fe Railway Company is the initial carrier in this shipment, and for the purposes of this case this claim will be allowed.   Counsel for the said company, the plaintiff in error, claims that there is no evidence showing that the damages for which suit was brought were occasioned on its line, and this contention is not seriously controverted by counsel for plaintiff; and the jury, in answer to a question in which it was called upon to state upon which line the goods were injured, answered, "Either the Atchison, Topeka & Santa Fe Railway or the Oklahoma Central Railway."   Counsel contends, however, that it was not necessary for plaintiff to show that the goods were actually damaged on the Atchison, Topeka & Santa Fe Railway, for the reason that the presumption was that the initial carrier was responsible for the damages done the goods, and that the burden was upon it to discharge this presumption or to be held liable, quoting, in support of this contention, paragraphs 724 and 725, sections 75 and 76 of article 5, ch. 14, Wilson's Rev. & Ann. Stat. Okla. 1903 (sections 514 and 515, Comp. Laws Okla. 1909), which read as follows:

"If a common carrier accepts freight for a place beyond his usual route, he must, unless he stipulates otherwise, deliver it at the end of his route in that direction to some other competent carrier, carrying to the place of address, or connected with those

who thus carry, and his liability ceases upon making such delivery.

"If freight, addressed to a place beyond the usual route of the common carrier who first received it, is lost or injured he must, within a reasonable time after demand, give satisfactory proof to the consignor that the loss or injury did not occur while it was in his charge, or he will be himself liable therefor."

These statutes are identical with sections 510 and 511, Stat. Okla. 1893, and the question here presented and the argument made is fully answered in a discussion thereof in the case of *St. Louis & San Francisco Railroad Co. v. McGivney,* 19 Okla. 361, 91 Pac. 693, wherein the Supreme Court of the territory held in the syllabus that:

"Where goods shipped over several connecting lines are found to be injured when they reach their destination, there is no presumption that the injury occurred while the goods were in the hands of the first carrier."

In the discussion, Mr. Justice Burwell, who prepared the opinion for the court, said:

"From section 510 it will be seen that the liability of the first carrier ceases when it delivers freight to a competent connecting carrier, carrying freight in the direction of the destination thereof. And section 511 provides that where freight is received by a common carrier and its destination is beyond the usual route of the carrier first receiving it, and such freight is lost or injured, the first carrier must, within a reasonable time after demand, give satisfactory proof to the consignor that the loss or injury did not occur while it was in its charge, and if it fails to furnish such proof it will itself be liable therefor. It is insisted that the word 'demand' meant by the statute is a demand for payment for the loss. We do not think so. The statute, recognizing that the first carrier can easily furnish proof as to whether or not the loss occurred on its line, has provided that it must furnish the shipper with satisfactory proof within a reasonable time that it was not responsible for such loss. The shipper, under the statute, may go to the first carrier and request it to furnish proof that the injury did not occur on its line, so that it may be able to locate the carrier responsible for the injury and sue it if necessary; but, if the first carrier fails to furnish the proof within a reasonable time, showing that the loss did not occur on its line, then it will be held liable therefor, regardless of whether

or not it was, in fact, responsible for the injury to the freight. And under this section the shipper is entitled to full and complete information regarding the shipment, so far as known to the first carrier, which could be used by such carrier in defending an action for damages therefor; that is, to all of the proof in its possession or under its control at the time that would tend to show that. the first carrier was not responsible for the loss. The penalty for failing to furnish such proof is absolute liability on its part to pay the damage sustained. It must, however, be observed that this statute is not intended to prohibit one who has sustained loss by reason of injury to freight from suing the first carrier without such demand; but, when he does so, the burden is on the shipper to show by a preponderance of the evidence that the injury was the result of the negligence of such first carrier. The statute was enacted primarily for the benefit of the shipper, but, when he fails to avail himself of its conditions in the first instance, and sues the first carrier without such demand, he cannot then take advantage of its provisions after the first carrier has been put to the trouble and expense of defending an action against it. The statute is intended to require the first carrier to furnish to the shipper on demand that information which, in the absence of the statute, the shipper could only compel in an action against it, or some other connecting carrier."

Practically the same doctrine was announced by this court in the case of *St. Louis & San Francisco R. Co. v. Jamieson,* 20 Okla. 654, 95 Pac. 417, wherein it was shown that the bill of lading recited that the goods were received "in apparent good order," which was the condition contained in the bill of lading in this case. In such a case this court held that:

"By such receipt or bill of lading issued by the initial carrier as agent for the delivering carrier, however, the *onus* is put upon the delivering carrier to show that they were not in the condition stated in the receipt."

In the discussion of the case it was said:

"The delivering carrier in accepting this shipment from its agent, the initial carrier, because it was an entire shipment, is presumed to have received the entire shipment. If it did not, it had it within its power on the trial of this cause to have introduced proof to that effect. The law places that burden upon it. Both reason and authority sustain this presumption. The very uncertainty as to where the goods were or on whose line

located, when damaged or lost, and the difficulty of ascertaining those facts by the consignor or consignee, renders this rule necessary. The carrier, almost without exception, will be able to show the condition of the property when reaching its custody; the shipper or consignee can rarely, if ever, do so. This is a salutary rule, resulting in justice to the greatest number affected; leaving it also to the party to prove the fact in whose power it expressly lies."

Counsel for plaintiff does not contend that there is evidence or proof of negligence on the part of the Santa Fe, but tried his cause on the theory that on receipt of the goods at Blanchard in bad condition, the burden to defeat liability was upon the initial carrier. Under the rule laid down in the foregoing cases, as we have seen, this position is not sound.

The judgment is accordingly reversed, and the cause remanded to the trial court, with instructions to set the same aside and grant plaintiff in error a new trial.

All the Justices concur.